**IN THE SUPREME COURT OF TENNESSEE**
**AT NASHVILLE**

**FILED**

FOR PUBLICATION

**Filed: April 19, 1999**

TOMMY NEAL HOLT, Deceased )

      Plaintiff, )

       )

v. )

       )

MARILYN KAY HOLLINGSWORTH )
HOLT, )

       )

      Defendant/Third-Party )
      Plaintiff/ and Counter- )
      Defendant/Appellee, )

       )

ELLIOTT NATHAN HOLT )

       )

      Third Party Plaintiff and )
      Counter-Defendant/Appellee, )

       )

v. )

       )

VICKIE LEWIS, Administrator Ad )
Litem for the Estate of Sophia Holt, )

       )

      Third Party Defendant and )
      Cross-Defendant/Appellant, )

       )

In Re: Proceeds of Old Line Life )
Insurance Company of America )
Policy No. 1878593L )

**April 19, 1999**

DAVIDSON COUNTY

**Cecil Crowson, Jr.**
Hon. Frank G. Clement, Jr.
Judge  **Appellate Court Clerk**

Supreme Court
No. 01S01-9809-PB-00165

FOR APPELLANT
John L. Whitfield, Jr.
Nashville, TN

FOR APPELLEES
John G. Doak, Sr.
Nashville, TN

# O P I N I O N

TRIAL COURT AND
COURT OF APPEALS AFFIRMED

DROWOTA, J.

In this case, we determine the rights of parties to the proceeds of a $50,000 insurance policy insuring the life of Tommy Neal Holt, now deceased. In a marital dissolution agreement incorporated in a divorce decree, the decedent had agreed to acquire a $100,000 life insurance policy naming his child as beneficiary and his former wife as trustee. At the time of his death, the decedent owned a $40,000 insurance policy naming his child as beneficiary and a $50,000 policy naming his mother, who subsequently died, as beneficiary. After suit was brought before the Probate Court of Davidson County, the trial court entered summary judgment in favor of the appellees and ordered that the proceeds of the $50,000 be paid to the former wife as trustee for the benefit of the child. The Court of Appeals affirmed. For the reasons stated hereinafter, we affirm the judgments of the lower courts.

## I. FACTS & PROCEDURAL HISTORY

Tommy Neal Holt ("the Decedent") and Marilyn Kay Hollingsworth Holt divorced pursuant to a decree entered by the Probate Court for Davidson County on May 8, 1990. At the time of the divorce, the couple had one child, Elliott Nathan Holt, born in June of 1978. The divorce decree incorporated the terms of a marital dissolution agreement between the parties. The parties were given joint custody of Elliott Holt, and Mr. Holt was required to make child support payments. Paragraph XII of the marital dissolution agreement provided as follows:

<u>Life Insurance</u>

The Husband and Wife agree that the Husband shall maintain and keep in full force and effect a life insurance policy in the amount of one hundred thousand dollars ($100,000) to secure his obligations for the payment of child support and other debts as set out in this Agreement. The Husband and Wife agree that the parties' child, Elliot Nathan Holt, shall be named as the sole and irrevocable beneficiary of the Husband's one hundred thousand dollar ($100,000) life insurance policy as set out in this Agreement. The Husband and Wife agree that the Wife will be named as Trustee for the benefit of the parties' minor child. In her capacity as Trustee, the Wife shall be, and is hereby authorized and directed to use the proceeds to provide generally for the child's health, education and support. The Husband and Wife further agree that any monies in the Wife's possession as Trustee for the benefit of the parties' minor child will be given to the parties' minor child at age twenty five with all proceeds that are remaining in trust for the benefit of the child to be paid over to the child at the child's twenty fifth birthday.

The Husband and Wife further agree that within thirty days of the entry of the Final Decree of Divorce, the Husband will furnish to the Wife a copy of the policy or policies defined herein, showing the appropriate beneficiary designation as set out in this Agreement. In addition, the Husband will take whatever steps are necessary to allow the Wife to determine directly from the Husband's insurance agent whether or not the monthly premiums are being paid in accordance with the terms of the insurance policy or policies listed in this section.

Another clause in the divorce decree[1] stated that the provisions would be "binding upon and inure to the benefit of the parties hereto, their personal representatives, heirs and assigns." At the time of the divorce, the Decedent did not own any life insurance.

The record reflects that the Decedent failed to comply with the divorce decree by not procuring a $100,000 life insurance policy listing Elliott Holt as the beneficiary and providing Marilyn Holt with a copy of the policy. In September of 1992, while he

---

[1]The divorce decree incorporating the marital dissolution agreement will be collectively referred to as the "divorce decree" throughout this opinion.

and Elliott Holt were apparently living with the Decedent's mother, Sophie Holt, the Decedent obtained from Old Line Life Insurance Company of America ("Old Line") a life insurance policy in the amount of $50,000. The Decedent designated his mother, Sophie Holt, as the beneficiary of this policy. In 1995 the Decedent obtained, as a benefit from beginning employment with his new employer, Patterson Press, a $40,000 policy on his life. He designated Elliott Holt as the sole beneficiary of this $40,000 policy, and no one was listed as trustee.

The Decedent died on January 12, 1996. At that time he was in arrears in making child support payments in the amount of $2,721.09. Less than one week after the Decedent's death, Sophia Holt altered her will so that all of her estate was bequeathed to Ms. Vickie Lewis.[2] Following the Decedent's death, all proceeds of his $40,000 life insurance policy were tendered to Elliott Holt, and this policy is not in controversy in this suit.

In January of 1997, Marilyn Holt and Elliott Holt[3] filed this complaint seeking to enforce the May 8, 1990 final divorce decree. Specifically, the complaint demands that the proceeds of the $50,000 Old Line policy be paid to Marilyn Holt as trustee for the benefit of the Child in accordance with the terms of the divorce decree. Sophia Holt and Old Line were listed as defendants in this action. The trial court dismissed the complaint against Old Line after Old Line interplead the funds.

---

[2] The record does not indicate Sophia Holt's relationship with Ms. Lewis.

[3] Throughout this opinion, Marilyn Holt and Elliott Holt will often be referred to collectively as "Elliott Holt."

-4-

While this matter was pending before the trial court, Sophie Holt died. In addition to bequeathing all of her possessions to Ms. Lewis, Sophie Holt's will named Ms. Lewis as the administrator ad litem for her estate. Accordingly, Ms. Lewis was substituted for Sophie Holt in this action.

Elliott Holt and Ms. Lewis proceeded to file motions for summary judgment. After considering motions, affidavits, and other documents filed by the parties, the trial judge granted summary judgment in favor of Elliott Holt and ordered that the proceeds of the $50,000 Old Line Policy be transferred to Marilyn Holt as trustee for the use and benefit of Elliott Holt. The trial court reasoned as follows:

> Since on 9/8/92, when Tommy Neal Holt applied for the $50,000.00 Life insurance policy (the proceeds of which are the subject of this suit), both Tommy Neal Holt and Elliott Nathan Holt were living with Mr. Holt's mother (Sophia Holt), and since Tommy Neal Holt had been ordered on May 8th of 1990 to obtain $100,000 in life insurance on his life and to make Elliot Nathan Holt, its beneficiary, the Court draws the inference, both from a logical standpoint and from the maxim of equity that "Equity regards that as done which ought to be done", that it was the intent of Tommy Neal Holt to comply with the Order of the Court (although he obtained only $50,000.00 of the $100,000.00 insurance that had been ordered, and named his mother, Sophia Holt, as the beneficiary instead of his son (who was still a minor) or his ex-wife) and that he intended that his mother be the beneficiary only as Trustee for the use and benefit of his son, Elliott Nathan Holt; and, that it was his intent to simply substitute his mother in place of his ex-wife as such Trustee; and thus, in effect, creating a constructive trust, for the use and benefit of his son.

On appeal, the Court of Appeals affirmed, finding that the trial court's decision was consistent with Tennessee case law and equitable principles. From this order, Ms. Lewis appeals.

## II. ANALYSIS

It is undisputed that the Decedent breached his obligation under the final divorce decree to maintain a $100,000 life insurance policy listing Marilyn Holt as trustee and Elliott Holt as the beneficiary. Ms. Lewis contends that since the Decedent was not prohibited from purchasing other life insurance policies listing other individuals as beneficiaries, Elliott Holt's only remedy is an action against the Decedent's estate. Therefore, Ms. Lewis contends that the trial court should have granted summary judgment to her instead. Elliott Holt responds that the trial court properly found that he was entitled to the proceeds of the $50,000 policy.

## A. Standard of Review

In this case, both Elliott Holt and Ms. Lewis moved for summary judgment. On appeal, Ms. Lewis appears to assert both that the trial court erred in granting summary judgment to Elliott Holt and that the trial court should have granted summary judgment to Ms. Lewis. Summary judgment is appropriate if the movant demonstrates that no genuine issues of material fact exist and that the movant is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. We must take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in favor of the nonmovant and discarding all countervailing evidence. Shadrick v. Coker, 963 S.W.2d 726, 731 (Tenn. 1998) (citing Byrd v. Hall, 847 S.W.2d 208, 210-11 (Tenn. 1993)). Since our review concerns only questions of law, the trial court's judgment is not presumed correct, and our review is de novo on the record before this Court. Warren v. Estate of Kirk, 954 S.W.2d 722, 723 (Tenn. 1997); Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997).

**B. Tennessee Law**

Tennessee courts have long recognized that "[e]quity regards that as done which in good conscience ought to be done." McCann Steel Co. v. Third Nat. Bank, 337 S.W.2d 886, 891 (Tenn. App. 1960); William H. Inman, Gibson's Suits in Chancery § 21 (7th ed. 1988); 11 Tenn. Jur. Equity § 11 (1995); 2 Pomeroy Equity Jurisprudence § 364 (5th ed. 1941).

Judge Cardozo has articulated the rationale supporting the judicial recognition of one equitable device, a constructive trust, as follows:

> A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee.

> \*          \*          \*

> A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief.

Beatty v. Guggenheim Exploration Co., 122 N.E. 378, 380-81 (N.Y. 1919); see also Akers v. Gillentine, 231 S.W.2d 369, 371 (Tenn. 1948). Tennessee courts have employed equitable devices to avoid the unjust enrichment of a person who:

> by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal title to property which he ought not, in equity and good conscience hold and enjoy.

Rowlett v. Guthrie, 867 S.W.2d 732, 734 (Tenn. App. 1993) (quoting Livesay v. Keaton, 611 S.W.2d 581, 584 (Tenn. App.1980)); see also Burleson v. McCrary, 753

S.W.2d 349, 353 (Tenn. 1988).

Tennessee courts have utilized equitable grounds to protect persons legally mandated to be listed as beneficiaries of a life insurance policy. As such, it is clear under Tennessee law that an enforceable agreement, such as a marital dissolution agreement, which mandates that an individual be listed as a beneficiary of a life insurance policy existing at the time of the agreement vests in that individual an equitable interest in the designated policy. In Goodrich v. Massachusetts Mut. Life Ins. Co., 240 S.W.2d 263 (Tenn. App. 1951), the plaintiff former wife and her husband entered into a marital dissolution agreement which was subsequently incorporated into a divorce decree. The agreement included the following provision:

> The [husband] further agrees to pay the premiums upon and to continue in force a certain policy of insurance on his life, which said policy is in the sum of Five Thousand Dollars ($5,000.00), and to keep said insurance in force in favor of [the wife] as beneficiary thereof. The said policy of insurance shall be kept in force in favor of [the wife] during the period that she shall remain separated from [the husband] and in the event that she obtains a divorce, during the period that she shall remain single thereafter.

Id. at 265. The husband, at the time of the agreement and divorce decree, had in effect a policy insuring his life in the amount of $5,000. Fourteen years after the divorce, the husband changed the beneficiary on the policy so that it listed his son. After changing the beneficiary, the husband died.

In ruling that Marilyn Holt was entitled to the proceeds of the life insurance policy in question, the Court of Appeals stated as follows:

> It is true that where the right to change the beneficiary has been reserved to the insured by the terms of the insurance policy, the beneficiary named in the policy has a mere expectancy, and has no vested right or interest during the life time of the assured. Page v.

-8-

Detroit Life Insurance Co., 11 Tenn. App. 417, at page 424, and cases therein cited.

However, in this case the divorce decree specifically provides that the agreement made by the parties on September 3, 1932, was by the court ratified, approved and its provisions adopted by the court. These provisions thus become a part of the decree. . . .

The effect of this decree is more than a mere assignment by the insured of his right to change the beneficiary. It was a judicial determination that the insured should have the right to change the beneficiary only in the event that [the former wife] should remarry.

We think the legal consequence of this decree was to give [the former wife] a vested interest in the proceeds of the policy, subject to be divested only by a rightful change of the beneficiary by the insured, and this could be done only in the event the wife should remarry.

In his [sic] view of the case, it cannot be doubted that an attempt by the insured to change the beneficiary without the joinder of the beneficiary cannot affect the rights of the latter. 29 Am.Jur. p. 402, Sec. 493; p. 986, Sec. 1316; Page v. Detroit Life Ins. Co., 11 Tenn. App. 417.

The following statement in 29 Am. Jur. Sec. 1314 is fully applicable to the case at bar:

> "Equities may arise in favor of the beneficiary in a life insurance policy which will deny the insured the right to change the beneficiary, as, for example, the insured, for a valuable consideration, estops himself from changing his designation of the beneficiary."

There could hardly be a stronger case for the application of this rule than the case under consideration. Certainly if the insured himself were alive in a contest between him and the former wife, he could not be heard to say that he had either assigned a policy or changed the beneficiary. And, his privies can stand on no higher ground than he does. This is true because the rights of both an assignee and a beneficiary are derivatives. (Citations omitted).

\* \* \*

[T]he decree in the divorce case gave the [former wife] a vested right in the policy, as between her and the insured. In violation of the agreement and the decree, the insured has fraudulently attempted to deprive her of the proceeds of the policy by an attempted change of beneficiary. Equity will intervene in such case and declare her beneficiary in the policy.

Goodrich, 240 S.W.2d at 269-70, 272.

The Court of Appeals addressed similar factual circumstances in Herrington v. Boatright, 633 S.W.2d 781 (Tenn. App. 1982). In that case, a marital dissolution agreement that was incorporated into a divorce decree required the husband to "keep his life insurance in effect and shall keep Wife as the beneficiary so long as they are married or if they should divorce, so long as she is not remarried." Id. at 782. Relying on Goodrich, the Court nullified the husband's attempt to change the beneficiary of the life insurance policies subsequent to the divorce. Id. at 783; see also Bell v. Bell, 896 S.W.2d 559 (Tenn. App. 1994); Holbert v. Holbert, 720 S.W.2d 465 (Tenn. App. 1986).

In Dossett by Dossett v. Dossett, 712 S.W.2d 96, 97 (Tenn. 1986), a divorce decree obligated the husband "to maintain a $20,000.00 life insurance policy upon his life and with the minor children of the marriage designated as the beneficiaries of said policy." At the time of the divorce, the husband owned one life insurance policy naming the former wife as beneficiary but its value at that time was unknown. Shortly after the divorce, the husband remarried and named his new wife as the beneficiary of this policy. At no time were the children, the mandated beneficiaries, ever listed as beneficiaries of the policy. The former wife did not discover the husband's breach of this divorce provision until his death by accidental drowning four years after the divorce. At the time of his death, the husband had no other insurance policy, and the insurance policy at issue included a $26,000 group life benefit and a $50,000 special accidental death benefit.

This Court first found that the life insurance policy at issue was the policy to which the divorce decree referred and had an approximate value of $20,000 at the time of the divorce. Id. at 98. Holding that the children were entitled to the proceeds of the insurance policy, the Court reasoned as follows:

> Under the stipulated facts of this case, we perceive no significant difference between the provision of the property settlement agreement in Herrington, supra, that the husband "shall keep his life insurance in effect and shall keep Wife as the beneficiary" and that in the divorce decree in the present case where the husband "is required to maintain a $20,000 life insurance policy upon his life and with the minor children of the marriage designated as the beneficiaries of said policy."

Id. at 99. The Court proceeded to find that the children were entitled to the entire amount of the policy, including the accidental death benefit, since it was part of the same policy. Id. at 99-100.

These cases stand for the proposition that when a life insurance policy exists at the time of the divorce decree, the mandated beneficiary of the divorce decree retains a vested interest in that policy in the event that the obligor spouse does not comply with the terms of the divorce decree. No reported cases in Tennessee, however, address the circumstance in the present case in which no identifiable insurance policy existed at the time of the divorce.[4] In the present case, Ms. Lewis argues that these aforementioned cases are distinguishable. Ms. Lewis contends that since no insurance policy existed at the time of the Decedent's divorce, there is no evidence of a fraudulent transfer or any other form of abuse of confidence,

_____

[4]Although we granted permission to appeal in a Tenn. R. App. P. 11 application in January of 1997 to resolve this specific issue, the appeal was subsequently dismissed by the parties.

duress, or the commission of a wrong. Furthermore, Ms. Lewis stresses that the divorce decree did not expressly prohibit the Decedent from obtaining other life insurance policies listing other individuals as beneficiaries. Accordingly, Ms. Lewis asserts that Elliott Holt does not have a vested right in any particular insurance policy and, thus, Elliott Holt is simply an ordinary creditor of the Decedent's estate. Elliott Holt responds that the principles espoused in such cases as Goodrich, supra, and Dossett, supra, should be extended to the case at hand due to public policy considerations that discourage the violation of contractual agreements and court orders.

**C. Other Jurisdictions**

Because no case law in Tennessee specifically addresses this issue, we have looked to other jurisdictions for guidance. As in Tennessee, the vast majority of related case law in other jurisdictions involves circumstances in which identifiable life insurance policies existed at the time that the divorce decree was entered. See generally Annotation, 59 A.L.R.3d 9 (1974 & Supp. 1998); 24 Am. Jur. 2d § 857 (1983 & Supp. 1998), Kelvin H. Dickinson, Divorce and Life Insurance: Post Mortem Remedies for Breach of a Duty to Maintain a Policy for a Designated Beneficiary, 61 Mo. L. Rev. 533 (1996). The facts in a few cases, however, are remarkably similar to the facts in the instant case.

In Equitable Life Assurance Soc'y v. Flaherty, 568 F. Supp. 610, 611 (S.D. Ala. 1983), the couple's divorce decree required the husband to "maintain a life insurance policy in the amount of $10,000.00 on himself making the parties minor child the

irrevocable beneficiary on same." At the time of the agreement and divorce, no life insurance policy existed. Three years later, the husband obtained life insurance from his employer and designated his new wife as the beneficiary. When the husband died a few months later, this policy was worth $53,100 and was the only existing life insurance policy. At no time prior to his death had the husband complied with the life insurance policy provision of the divorce decree. When the former wife brought suit on behalf of the decedent's minor daughter, the named beneficiary claimed that the daughter's only remedy was an action against the decedent's estate.

Applying Florida law, the court ruled that equity compelled a finding that the child was entitled to proceeds of the insurance policy, but only to the extent of $10,000, the amount specified in the divorce decree. The court found as follows:

> The Court agrees that the present case, herein the husband has obviously been ordered to obtain an insurance policy, differs from the many other cases . . . wherein a party to divorce has been ordered to maintain an existing policy naming a minor child as beneficiary. However, in view of the intent and purpose of the decree, to-wit: providing security for the support of the minor child, this Court does not find the difference to be significant or distinguishable.

*       *       *

> The Court concludes that, so far as decedent [husband's] obligation under the stipulation of the divorce decree requiring that he maintain the above-mentioned insurance coverage, he had no power in contemplation of law to name anyone other than his daughter . . . as beneficiary to the extent of $10,000.00 in proceeds of the only insurance policy he secured after said divorce decree. [The second wife], as named beneficiary of the policy, thus may claim title to the proceeds of the policy subject to the equitable interest which [the daughter] acquired by virtue of the divorce decree. The designation of [the second wife] as beneficiary of the life insurance proceeds by the insured, [the decedent], pursuant to the terms of said policy, does not defeat the prior order of court requiring that the insured's minor child be named irrevocable beneficiary of life insurance proceeds to the extent of $10,000.00. To rule otherwise would defeat the obvious intent of the property settlement and the final divorce decree and would abrogate

> the power of any Florida court to equitably provide security for the care, custody and maintenance of minor children. . . .

Id. at 615-16. Notably, the court refused to hold the child accountable for her mother's failure to enforce the divorce decree prior to the decedent's death, and labeled the named beneficiary's knowledge of the terms of the divorce decree as "irrelevant" to its analysis. Id. at 615 n.2.

In Pernick v. Brandt, 506 N.W.2d 243, 244 (Mich. App. 1993), the divorcing husband was required to "maintain a Fifty Thousand Dollar life insurance policy" naming the former wife as beneficiary. At the time of the divorce, the husband did not own a life insurance policy. A few months after the divorce, the husband complied with the divorce decree by obtaining a $50,000 life insurance policy naming the former wife as the beneficiary. Sixteen months later, however, the husband canceled the policy. Seven months after the policy was terminated, the husband purchased a new $100,000 policy naming his second wife as the beneficiary. After the husband died, the former wife brought suit to collect $50,000 of the proceeds of the $100,000 policy.[5] The trial court granted summary disposition to the former wife, ordering that she was entitled to $50,000 of the proceeds of the policy at issue.

On appeal, the Michigan Court of Appeals contrasted the case with existing Michigan case law precedent "because in this case there was no life insurance policy naming [the former wife] as beneficiary at the time of the divorce. Nor was [the former wife] ever named beneficiary of the policy at issue in this case." Id. at 245.

---

[5]The second wife responded that she had already spent $75,000 of the proceeds on expenses related to the decedent's terminal illness.

-14-

Nevertheless, the Court cited Flaherty, supra, and concluded that the divorce decree vested the former wife with "an equitable interest in $50,000 of the proceeds of any insurance policy subsequently purchased by [the decedent] on his life." Pernick, 506 N.W.2d at 245 (emphasis added). Because the decedent did not own a life insurance policy at the time of the divorce, the Court construed the divorce decree as requiring the decedent to "acquire and maintain" a $50,000 policy listing the former wife as the beneficiary. Id.

Notably, however, the Court ruled that the former wife had an equitable interest in the proceeds of "any" life insurance policy and not necessarily the policy listing the second wife as beneficiary. Id. Thus, the Court held that the trial court erred in granting summary disposition to the former wife "without determining to what extent, if any, [the second wife] also had an interest in the proceeds of the insurance policy and whether [the former wife's] equitable interest is superior to any interest held by [the second wife]." Id. at 246. Citing Greenberg v. Greenberg, 264 Cal.App.2d 896, 71 Cal. Rptr. 38 (1968), the Court indicated that if the second wife provided consideration for the policy, she may be in the nature of a bona fide purchaser and, thus, have a superior interest to the proceeds. Pernick, 506 N.W.2d at 246. Noting that the trial court had failed to consider an affidavit filed by the second wife claiming that she had no knowledge of the insurance policy provision of the divorce decree at issue and that she had used funds from her personal inheritance to pay premiums on the policy, the Court ruled that summary disposition was premature. Id. at 246-47.

A different approach was taken by the Wisconsin Court of Appeals in Parge

-15-

v. Parge, 464 N.W.2d 217 (Wis. App. 1990).  In this case a divorce decree required the husband to "maintain a minimum of $7,500.00 life insurance policy with the minor children of the parties as beneficiaries."  Id. at 218.  At the time of this divorce in 1974, the husband did not own any life insurance.  The husband married a second time and had a daughter by this marriage, but this marriage also ended in divorce.  At the time of his death in 1988, the decedent had two life insurance policies in effect.  One policy, worth $15,000, was obtained in 1987 and listed his daughter by his second marriage as the beneficiary.  The second policy, valued at $1,510.89, was originally owned by the decedent's father until 1977 at which time it was owned by the decedent.  This second policy listed the decedent's second wife as the beneficiary.  The minor children of the first marriage brought suit, seeking to impose a constructive trust on the proceeds of both of the life insurance policies.

In a split decision, the Court of Appeals affirmed the trial court's decision granting summary judgment to the named beneficiaries.  After citing precedent in which Wisconsin courts had imposed constructive trusts on insurance proceeds in similar cases, the majority reasoned as follows:

> Distinguishably, in the case before us, there were no preexisting policies.  There was nothing for [the plaintiffs'] right to "vest" in.  More appropriately, [the decedent] could have been cited for contempt for failure to acquire and maintain policies as ordered.  The court order to "maintain" insurance gave rise to no right to a constructive trust over subsequently acquired insurance.

> To impose a constructive trust on property transferred to a third party, the identity of the trust fund must be established. . . . In this case, there were no "funds" or policies in existence at the time of the [divorce] order.  There was no transfer to another fund upon which a trust could attach because there was nothing to transfer.

Id. at 219.[6]

Although the facts are not directly on point, several other cases from other jurisdictions are also enlightening. In a majority of these decisions, courts have tended to enforce the divorce decree obligation of the deceased former spouse by providing an equitable remedy at the expense of the named beneficiaries. See, e.g., Rollins v. Metropolitan Life Ins. Co., 912 F.2d 911 (7th Cir. 1990) (interpreting Indiana law) (finding that mandated beneficiaries of a divorce decree life insurance provision have a vested right in certain proceeds of a decedent's life insurance policy naming another person as beneficiary when the decedent failed to comply with the divorce decree); Tintocalis v. Tintocalis, 25 Cal. Rptr.2d 655, 659 (Cal. App. 1993) ("Where, as here, the obligor spouse violates an order to maintain life insurance, a constructive trust may be imposed."); Reeves v. Reeves, 223 S.E.2d 112 (Ga. 1976) (finding that children mandated beneficiaries had vested interest in certain proceeds of the decedent's life insurance policy); Appleman v. Appleman, 410 N.E.2d 199 (Ill. App. 1980) (finding that former wife mandated beneficiary was entitled to the imposition of a constructive trust pertaining to proceeds of the decedent's life insurance policy); Simonds v. Simonds, 380 N.E.2d 189 (N.Y. 1978) (imposing constructive trust in favor of former wife mandated beneficiary); McKissick v. McKissick, 560 P.2d 1366 (Nev. 1977) (finding that former wife mandated beneficiary entitled to life insurance policy proceeds); Thomas v. Studley, 571 N.E.2d 454 (Ohio App. 1989) (finding that

_____

[6]The dissenting judge opined that equity dictates that the plaintiffs should prevail due to the unjust enrichment of the named beneficiaries in violation of the divorce decree. Id. at 220 (Fine, J., dissenting).

-17-

mandated beneficiary child entitled to life insurance policy proceeds); Madsen v. Moffitt, 542 P.2d 187 (Utah 1975) (finding that mandated beneficiaries were entitled to certain life insurance policy proceeds); Nielsen v. Nielsen, 535 P.2d 1239 (Utah 1975) (finding that mandated beneficiaries entitled to amount of life insurance policy proceeds specified in the divorce decree). But see Lock v. Lock, 444 P.2d 163 (Ariz. App. 1968) (finding that the mandated beneficiaries' only remedy is an action against the decedent's estate for breach of the divorce decree); Rindels v. Prudential Life Ins. Co., 489 P.2d 1179 (N.M. 1971) (finding that since no fraud was shown, mandated beneficiaries were not entitled to proceeds of life insurance policy).

## III. CONCLUSION

After carefully considering principles of law as well as principles of equity, we conclude that no significant difference exists between circumstances in which an identifiable life insurance policy existed at the time of the divorce, e.g., Dossett, supra, Goodrich, supra, and the circumstances of the present case. See Flaherty, 568 F. Supp. at 615 ("[T]his Court does not find the difference to be significant or distinguishable."). The language of the life insurance policy provision of the divorce decree in the present case requires that Elliott Holt be named as "the sole and irrevocable beneficiary" of a $100,000 policy. When Elliott Holt reaches age twenty-five, the decree mandates that all proceeds be paid over to him. Furthermore, the terms of the decree are "binding upon and inure to the benefit of the parties . . ., their personal representatives, heirs and assigns." We believe that the clear language of the divorce decree contemplates a continuous obligation in which Elliott Holt should be provided for in the event of the Decedent's death. Thus, we find that the divorce decree creates in Elliott Holt a vested right to any life insurance policy obtained by the Decedent that satisfies the mandate in the decree.

We agree with the district court in Flaherty that a contrary ruling would "abrogate the power" of divorce courts in this state. See Flaherty, 568 F. Supp at 616. We believe that the public policy of this state strongly favors the enforcement of court orders, particularly when the welfare of children is involved. When this public policy consideration is juxtaposed with the unique facts of the present case, it appears that the lower courts properly applied the maxim, "[e]quity regards that as done which in good conscience ought to be done." McCann Steel, 337 S.W.2d at

-19-

891; <u>Gibson's Suits in Chancery</u> § 21. In the present case, the Decedent, while he and Elliott Holt were living with the Decedent's mother, Sophia Holt, named his mother as the beneficiary of the life insurance policy at issue. The trial court found that the Decedent had effectively created a constructive trust in which Sophia Holt was trustee for the use and benefit of Elliott Holt. The fact that Sophia Holt altered her will a few days after the Decedent's death so that her entire estate was bequeathed to Ms. Lewis, a third party, should not, in the interest of equity, defeat this constructive trust. We further find no merit in the contention of Ms. Lewis, grounded in the principle of laches, that Elliott Holt should not recover the proceeds at issue due to his mother's failure to enforce the divorce decree while the Decedent was alive. A minor child mandated as a beneficiary should not be forced to suffer as a result of the neglect of the trustee. <u>See</u> <u>Flaherty</u>, 568 F. Supp. at 615 n.2.

The judgments of the lower courts granting summary judgment to the appellees are affirmed. Costs of the appeal are taxed to Ms. Lewis.

_____

Frank F. Drowota, III,
Justice

Concur:

Anderson, C.J.
Birch, Holder, Barker, J.J.

-20-