IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## JOHN K. LAYTON, ET AL. v. LIFE USA, PENNY LAYTON, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. 122776 R.D.      The Honorable D'Army Bailey, Judge**

---

**No. W1999-02274-COA-R3-CV - Decided May 12, 2000**

---

After the mother and father divorced, the minor children of the parties filed a petition in the original divorce case to add additional parties and to impose a constructive trust on life insurance proceeds required by the court's decree concerning child support. From the order of the trial court holding that the court has jurisdiction and the order of the trial court granting summary judgment to the children, the other named policy beneficiaries have appealed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court reversed.**

CRAWFORD, P.J., W.S., delivered the opinion of the court, in which FARMER, J., and LILLARD, J., joined.

G. Coble Caperton, Memphis, For Appellant, Penny M. Layton

Mike H. White and John E. Dunlap, Memphis, For Appellants, Ron Kim, Trustee, et al

C. Barry Ward and Adam F. Glankler, Memphis, For Appellees

### OPINION

In this case, Lisa Rice Layton Hassell was awarded an absolute divorce from Floyd Douglas Layton, Sr., and the final decree entered June 7, 1989, awarded her custody of their three minor children and ordered appropriate support from the father. On October 5, 1998, after Floyd Douglas Layton, Sr., had died on July 14, 1998, the petitioners, John K. Layton, Amanda N. Layton, and Ashley E. Layton, minor children of the parties, by next friend and natural guardian, Lisa Rice Layton Hassell, filed a "Motion to Amend to Add Additional Parties and to Seek the Imposition of a Constructive Trust on Proceeds of Life Insurance." The trial court granted the motion, and an amended petition was filed by the petitioners against the respondents, Life USA, Penny Layton, Talmar Murphy, Regents Bank, as successor to United American Bank, Douglas Layton, Jr., Tina Reynolds, and Ronald Kim, Esquire, purported trustee for Talmar Murphy, Douglas Layton, Jr., and Tina Reynolds, et al. From the order granting summary judgment to the petitioners, the respondents, Penny Layton and Ronald Kim, Esquire, as trustee for Talmar Murphy, Douglas Layton, Jr., and Tina Reynolds, have appealed.

Floyd D. Layton was married three times. He was first married to Debbie Bray. There were two children of that marriage, Floyd Douglas Layton, Jr., and Tina Layton Reynolds, now 26 and 27 years old. Layton's second marriage was to Lisa Rice Layton (also known as Lisa Rice Layton, Lisa Rice Layton Pitts, or Mrs. Hassell, herein referred to as "Mrs. Hassell"). There were three children born of this marriage, John Kyle Layton, Amanda Nicole Layton, and Ashley Elizabeth Layton, all still minor children and made parties to this action by an order entered by the trial court on November 6, 1998. Floyd Layton's third marriage was to Penny Layton, and they were divorced in 1994. In April of 1994, Floyd Layton was diagnosed with cancer. Although divorced, Floyd Layton moved back in with Penny Layton and lived with her until his death on July 4, 1998. At the time of his death, Mr. Layton was a manager at a car dealership owned by Al Gossett.

On July 13, 1995, prior to Mr. Layton's death, Mrs. Hassell, then Lisa Rice Layton Pitts, filed a petition to modify the previous order and requested, among other things, that Mr. Layton be required to provide at least $250,000.00 in life insurance with the three minor children as beneficiaries stating:

> Petitioner would state that Respondent was diagnosed with cancer about a year ago and he had an operation to remove two tumors and his kidney along with undergoing chemotherapy. He is in complete remission now and is working full-time. Because of Respondents health problems, it would be in the best interests and welfare of the minor children of the parties, if Respondent was ordered to name the minor children as the sole and irrevocable beneficiaries of a minimum of $250,000.00 life insurance policy or in an amount set by the Court.

On November 22, 1995, a consent order was entered concerning Mr. Layton's support obligation and, as pertinent to the issues before us, provides:

> The Respondent shall provide documentation of the life insurance he has on his life at present. Said life insurance shall show the parties' children as irrevocable beneficiaries so long as he has a child support obligation for them. It is understood that the Respondent's present insurance may not cover the entire obligation he has for child support, but that he is unable to obtain additional insurance coverage because of his medical history.

On January 30, 1996, Mrs. Hassell, then Lisa Rice Layton Pitts, filed a petition for citation for contempt against Mr. Layton, claiming that he had failed to pay the sums required by the consent order, and that he had not provided the documentation of life insurance. On May 21, 1996, counsel for Mr. Layton wrote to counsel for Mrs. Hassell enclosing a copy of the change of beneficiary form that Mr. Layton had supplied to his insurance agent. The form provided beneficiary designation is as follows:

BENEFICIARY CHANGE

*            *            *

BENEFICIARY DESIGNATIONS ARE IN EQUAL SHARES UNLESS OTHERWISE SPECIFIED IN FRACTIONS OR PERCENTAGES.

First Benefciary(ies):

| John Kyle Layton | Son | 33,333 |
| Amanda N. Layton | Daughter | 33,333 |
| Ashley E. Layton | Daughter | 33,333 |
| Penny M. Layton | Spouse | Remainder of Insurance |

On October 21, 1996, the policy was changed by reducing Penny Layton's share to 23.1 percent and placing the remainder in trust. The form specifies United American Bank as the first beneficiary and reads as follows with regard to the secondary beneficiaries:

> 23.1% to my ex-wife Penny Layton, the balance to my trustee Ronald W. Kim, to pay the income derived [sic] from said corpus to my mother Talmar Murphy for life and upon her death the balance equally to my children then living, with my trustee to use his discretion [sic] with regard to any payments to or on behalf of my minor children then living and to pay to any of my children over 21 years of age the respective shares. My trustee is is [sic] required to post no bond, however, is to comply with the fiduciary responsibilities applicable in the Tennessee Code.

The petition for contempt was dismissed with prejudice by an order entered October 31, 1996, stating that the parties had announced to the court that they had resolved their dispute.

On October 5, 1998, and again on October 23, 1998,[1] after the death of Mr. Layton, Mrs. Hassell filed the instant proceeding seeking to obtain for her children the life insurance proceeds alleging that Mr. Layton failed to make his minor children irrevocable beneficiaries on his policy. The motion was granted on November 6, 1998. On November 22, 1998, Life USA paid proceeds in the amount of $263,000.00 to the registry of the court, and the life insurance company was released as a party. United American Bank was listed as a party because it was named as a beneficiary to protect Mr. Layton's debt to the bank. That debt was satisfied by Penny Layton, and United American Bank and its successor, Regina Bank, are no longer parties.

---

[1] The motion filed on October 23, 1998, included the trustee, Ronald Kim, who had not been named as a defendant in the October 5, 1998 motion.

On January 8, 1999, plaintiffs filed a motion for summary judgment. They assert that the record contains no evidence that Mr. Layton had the right to name additional beneficiaries as long as the minor children remained on the policy. Plaintiffs argue that it is undisputed that the parties entered a consent order on November 22, 1995, after plaintiffs had filed a petition to modify and that in that petition the plaintiff requested that the minor children become the sole, irrevocable beneficiaries.

On January 21, 1999, defendants filed a suggestion of death, and defendant Ronald Kim, purported trustee, and defendant Penny Layton filed motions to dismiss on the grounds that the court lacked jurisdiction to hear this matter. Defendants contend that when a party to a divorce dies, the action abates and therefore cannot be amended, and that the court cannot allow an amendment that drops the original plaintiff and defendant from the style of the case. Plaintiffs' motion for summary judgement and defendants' motions to dismiss were heard on March 5, 1999. Plaintiffs' motion for summary judgement was granted and respondents' motions to dismiss were denied. In interpreting the November 1995 order, the court stated: "[i]t just seems to me that the only reasonable construction of this November 22 order would be that whatever insurance he had was going to the children, except that for (what) he would be legally unable to hold for the benefit of the children." It is from the order granting summary judgment that the defendants, Penny Layton, Ronald Kim, trustee for Talmar Murphy, Douglas Layton, Jr., and Tina Reynolds now appeal, presenting two issues for review:

> I.    Whether the Trial Court erred by determining that it had jurisdiction to hear this case?
>
> II.   Whether the Trial Court erred in granting summary judgment ?

With regard to the first issue, whether the trial court retained jurisdiction over the action after the death of the original party, Floyd Layton, appellants assert that the action abated. Appellants rely on *Steele v. Steele*, 757 S.W. 2d 340, 342 (Tenn. Ct. App. 1988), for the proposition that a divorce action abates upon the death of either party. However, Steele did not involve the custody or support of minor children and we do not believe it is authoritative for the issue before us.

T.C.A. § 36-5-101(a)(1) provides:

> **Decree for support of spouse and children - Modification-Delinquencies. -** (a)(1) Whether the marriage is dissolved absolutely, or a perpetual or temporary separation is decreed, the court may make an order and decree for the suitable support and maintenance of either spouse by the other spouse, or out of either spouse's property, and of the children, or any of them, by either spouse or out of such spouse's property, according to the nature of the case and the circumstances of the parties, ***the order or decree to remain in the court's control***; ...(Emphasis added).

\* \* \* \* \*

In ***Sutton v. Sutton***, 220 Tenn. 410, 417 S.W. 2d 786 (Tenn. 1967), the Circuit Court of Macon county had awarded custody of a minor child to the father by a divorce decree. ***Id.*** at 787. Upon the death of the father, the mother petitioned the Circuit Court of Macon County to modify the divorce decree and award her custody, alleging that prior to his death, the father had left the minor child in the care of his brother who refused to permit the mother to take the child. ***Id.*** The brother, as defendant, filed a demurrer to the petition which the trial court sustained, holding that the court lost jurisdiction upon the death of the father. ***Id.*** In reversing the trial court, and holding that the Macon County Circuit Court had jurisdiction, the Court quoted T.C.A. § 36-818 (now 36-6-101) regarding custody awards and the continuing jurisdiction of the awarding court. The Court said:

> The effect of T.C.A. Section 36-820 and Section 36-828 is the Court which in a divorce, annulment or separate maintenance action awards custody and support of a child retains all decrees for custody and support within the control of the court to make such future changes or modifications as the exigencies of the case may require. ***Cravens v. Cravens,*** 30 Tenn.App. 487, 207 S.W.2d 593 (1942); ***Davenport v. Davenport***, 178 Tenn. 517, 160 S.W.2d 406 (1942); ***Coleman v. Coleman***, 190 Tenn. 286, 229 S.W.2d 341 (1950).

> The exclusive jurisdiction of the question as to whom the custody of a child should be awarded is in the court wherein the divorce was granted and the custody of the child first awarded. ***Coleman v. Coleman, supra; Johnson v. Johnson***, 185 Tenn. 400, 206 S.W.2d 400 (1947); ***Williamson v. Laughlin***, 192 Tenn. 580, 241 S.W.2d 576 (1961).

> Defendant, however, insists the cases above cited contemplate retention of the divorce decree during the lives of both parents for the purpose of any future modification of an award of the custody of a child.

> \* \* \*

> In the instant case the divorce and custody of the child was decreed in the Circuit Court of Macon County.

> The child, James Gregory Sutton, became the ward of the Court. That Court retained jurisdiction of ***every question relative to the welfare of the child. Williamson v. Laughlin, supra.*** (Emphasis added).

***Id.*** at 787-788.

-5-

In *Hoyle v. Wilson*, 746 S.W. 2d 665 (Tenn. 1988), a case involving the Uniform Reciprocal Enforcement of Support Act, the Court addressed the question of continuing jurisdiction of the original trial court. The Court held that when the state is both the responding state, as well as the rendering state, and the court retains continuing jurisdiction over the original order of support, thus having independent source of jurisdiction, the trial court may weigh the equities and merits of the case to fashion an appropriate order.

In so holding, the court succinctly reviewed the controlling authorities regarding the continuing jurisdiction of the trial court as to collateral issues to a divorce proceeding, stating:

> The Circuit Court of Davidson County has continuing jurisdiction over custody, support, contempt and other collateral issues that may arise subsequent to a divorce decree entered in that court. *See* T.C.A. § 36-5-101(e) (Supp. 1987); § 36-5-103(b)(1) (Supp. 1987); *Kizer v. Bellar*, 192 Tenn. 540, 241 S.W.2d 561 (1951); *Jarvis v. Jarvis*, 664 S.W. 2d 694 (Tenn. Ct. App. 1983); *Darty v. Darty*, 33 Tenn. Ct. App. 321, 232 S.W.2d 59 (1949); *Crane v. Crane*, 26 Tenn. Ct. App. 227, 170 S.W.2d 663 (1942). "The court is not divested of this continuing jurisdiction by the death of a party or his or her change of residence to another state." *Jarvis v. Jarvis, supra* at 696 (citations omitted). Further, a court in divorce and support proceedings sits as a court of equity. *Kizer v. Bellar*, *supra,* 192 Tenn. at 545, 241 S.W.2d at 563; *Mayer v. Mayer*, 532 S.W.2d 54, 58 (Tenn. Ct. App.1975). The statutes governing divorce, support, and custody have been consistently characterized as having a remedial purpose, providing the trial court with substantial discretionary powers to fashion orders based on the circumstances of the case. *See, e.g., Wilson v. Bowman,* 622 S.W.2d 58,61(Tenn. Ct. App. 1981); *Gossett v. Gossett*, 34 Tenn. App. 654, 659, 241 S.W.2d 934, 937 (1951); *Crane v. Crane, supra,* 26 Tenn. App. at 231, 170 S.W.2d at 665. "In short, it was the purpose of this beneficent statute to give the trial court such elasticity of action as was necessary to meet the equities of the case and as well take care of the interest of the State, which is a third party in interest in divorce cases." *Daugherty v. Dixon*, 41 Tenn. App. 623, 626, 297 S.W.2d 944, 945 (1956). ....

*Hoyle* at 671.

In *Tate v. Tate*, 797 S.W.2d 618 (Tenn. 1990), this Court reaffirmed that jurisdiction over custody of the child remained exclusively with the court entering the divorce decree and that the appointment of a guardian of the person or property of a minor child after divorce does not divest the divorce court of the authority to supervise the custody and the welfare of the child. *Id.* at 625.

Under the authorities cited above, we find that the trial court correctly held that the court retained jurisdiction over matters relevant to the support and the general welfare of the parties minor children, notwithstanding the death of the original respondent or a change in parties to the divorce.

The second issue addresses whether the trial court erred in granting summary judgment to the appellees. A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). If the facts are uncontroverted, summary judgment is inappropriate if reasonable minds could differ as to the inferences to be drawn therefrom. *Keene v. Cracker Barrel Old County Store, Inc.*, 853 S.W2d 501 (Tenn. App. 1992); *Prescott v. Adams*, 627 S.W.2d 134 (Tenn. App. 1981). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

The consent order in the instant case entered November 22, 1995 provides in pertinent part:
> The Respondent shall provide documentation of the life insurance he has on his life at present. **Said life insurance shall show the parties' children as irrevocable beneficiaries so long as he has a child support obligation for them**. It is understood that the Respondent's present insurance may not cover the entire obligation he has for child support, but that he is unable to obtain additional insurance coverage because of his medical history. (Emphasis added).

In ***Holbert v. Holbert***, 720 S.W.2d 465 (Tenn. Ct. App. 1986), the Eastern Section of this Court found that where the insured changed the beneficiary of his life insurance policy in defiance of a court order that he retain the policy, the children were entitled to all proceeds of the life insurance policies naturally flowing from their continuation, but not to additional insurance on the part of the insured. The ***Holbert*** Court stated "...that in doubtful cases the doubt should be resolved against the one who has changed the beneficiary in defiance of a court order." ***Id.*** at 468.

In the recent case of ***Holt v. Holt***, 995 S.W.2d 68 (Tenn. 1999), our Supreme Court reviewed the status of the law in Tennessee with regard to the enforcement of an agreement, such as a dissolution agreement, mandating that individuals be listed as beneficiaries of a life insurance policy. In that case, a divorced mother and her son filed suit to enforce a divorce decree requiring that the father maintain $100,000.00 in life insurance to secure child support obligations. ***Id.*** at 69. The father failed to comply with the divorce decree ordering that he supply documentation of the $100,000.00 life insurance policy showing appropriate beneficiary designation. ***Id.*** at 70. At his death, the father had a $40,000.00 life insurance policy naming his son as the beneficiary and former wife as trustee, and a $50,000.00 life insurance policy naming his mother as beneficiary. ***Id.*** The father's mother died prior to resolution of the action, leaving her entire estate to a third party, Ms. Lewis. ***Id.*** The trial court granted summary judgment to the mother and son, and ordered that the proceeds from the $50,000.00 policy be paid to former wife as the trustee for benefit of the son. The trial court was affirmed by both the Court of Appeals and the Supreme Court. ***Id.***

In affirming the lower courts, our Supreme Court stated:

> Tennessee courts have utilized equitable grounds to protect persons legally mandated to be listed as beneficiaries of a life insurance policy. As such, it is clear under Tennessee law that an enforceable agreement, such as a marital dissolution agreement, which mandates that an individual be listed as a beneficiary of a life insurance policy existing at the time of the agreement vests in that individual an equitable interest in the designated policy.

***Id***. at 72.

In ***Harrington v. Boatright***, 633 S.W.2d 781 (Tenn.Ct. App. 1982), the property settlement agreement provided:

> 5) *Insurance:* Husband shall keep his life insurance in effect and shall keep Wife as the beneficiary so long as they are married or if they should divorce, so long as she is not remarried.

***Id.*** at 782.

The Court enforced the provision as to two group policies, stating:

Where the right to change the beneficiary has been reserved to the insured, the beneficiary named in the policy has a mere expectancy and has no vested right or interest in the policy. However, where a divorce decree requires the husband to keep a life insurance policy in effect and denies him the right to change the beneficiary, then the wife as the named beneficiary has a vested interest in the policy. *Goodrich*, *supra*. Should the husband then attempt to change the beneficiary, the wife may assert her vested right.

The defendant argues that the property settlement agreement is vague and unenforceable because it does not refer to specific policies of insurance. This argument is totally defective because the normal meaning of the words "shall keep his life insurance in effect" pertains to all his life insurance in effect at that time and does not require a listing of the policies by company, number and amount. The defendant also argues that group life insurance differs from ordinary life insurance. We cannot follow this insistence to any degree where the only issue is who shall receive the proceeds of the two group policies issued by Equitable and Union Central.

*Id.* at 783.

In *Dossett by Dossett v. Dossett*, 712 S.W.2d 96 (Tenn. 1986), the husband was obligated by a divorce decree "to maintain a $20,000.00 life insurance policy upon his life and with the minor children of the marriage designated as the beneficiaries of said policy." At the time of the divorce the husband had only one life insurance policy, and this policy named his former wife as beneficiary. Apparently, the value at that time was unknown. After the divorce, the husband remarried and named his new wife as the beneficiary of the policy, and the children were never named as beneficiaries as mandated by the divorce decree. After the husband's death, the former wife discovered that the husband had not named the children as beneficiaries. At the time of his death, the husband had no other insurance policy, and the existing insurance policy included a $26,000.00 group life benefit, and a $50,000.00 special accidental death benefit. In holding that the children were entitled to the proceeds of the insurance policy, the court stated:

Under the stipulated facts of this case, we perceive no significant difference between the provision of the property settlement agreement in *Herrington, supra*, that the husband "shall keep his life insurance in effect and shall keep Wife as the beneficiary" and that in the divorce decree in the present case where the husband "is required to maintain a $20,000 life insurance policy upon his life and with the minor children of the marriage designated as the beneficiaries of said policy."

*Id.* at 99.

The Court then noted that the accidental death benefit was part of the insurance policy in existence and that the children were the deceased's beneficiaries of the entire proceeds of the policy.

Considering the above authorities, we find that the petitioners, as the mandated beneficiaries by virtue of the consent order, obtained a vested interest in the deceased's life insurance policy. The question remains, however, what is that vested interest. The consent order provides that the children are to be irrevocable beneficiaries "so long as he has a child support obligation for them." This language indicates that the insurance is to provide assurance that the child support obligation will be satisfied. The parental duty of a child support obligation terminates once the child reaches the age of majority. *See Burks v. Burks*, 1991 WL 12846, (Tenn. Ct. App.1991). By written agreement, parties may extend the duration and term of child support. *Id.* at \*\*4; *and Boals v. Boals*, 519 S.W.2d 594, 596 (Tenn. Ct. App. 1973). However, absent a written agreement or clear intention of the parties to bind themself to an extension of the child support obligation, a court is without authority to extend the obligation beyond the time that a child reaches the age of majority. *Id.*

The question that remains unanswered in the case before us is the extent to which the proceeds of Mr. Layton's life insurance policy will satisfy the mandate of the decree. This question is complicated by the fact that the children are receiving support in the form of social security death benefits on their father's account.

The "overwhelming majority of courts allow credit for Social Security payments against court ordered child support for the same period as payment." *Sherrell v. Sawyer*, 1987 WL 12498, \*6 (Tenn. Ct. App). In *Sherrell*, the parties were divorced in North Carolina and the husband was ordered to pay $15.00 a week for the support of the two children of the marriage. While hospitalized, the husband, as a result of a drug overdose, was placed in a coma and rendered $100% disabled. *Id.* at \*1. From September of 1978 to April 1979, the wife receive no child support. *Id.* From April of 1979 until the maturity of the children, the wife received social security benefits for the support of the children. *Id.* In 1985 the husband received a settlement of his claim for injury from malpractice. *Id.* It was determined at the trial that the husband had been adjudged incompetent and had a conservator. *Id.* Husband had no assets except a farm and a business, both of which were losing money. *Id.* The trial court rendered judgement in favor of the wife for $8,430.00 for unpaid child support payments and declined to credit the social security payments against the award. *Id.* On appeal, the husband raised the issue of whether the trial court erred in failing to credit social security disability payments made to the custodial parent from the account of the disabled non-custodial parent against any child support obligations. The Court of Appeals reversed the trial court stating:

> We hold where a father who has been ordered to make child support payments becomes totally and permanently disabled, and unconditional Social Security payments for the benefit of the minor children are paid to the divorced mother, the father is entitled to credit for such payments by the government against his liability for child

-10-

support under the divorce decree....

*    *    *    *    *    *

[T]he majority view [is] that a social security support payment is a pro tanto satisfaction of a court ordered support payment.

*Id.* at *6.

In its analysis, the ***Sherrell*** Court cited with approval the decision of the Court of Civil Appeals of Alabama in ***Bowden v. Bowden***, 426 So.2d 448 (Ala. Civ. App. 1983). In ***Bowden***, the separation agreement of the parties provided in pertinent part that the father would maintain life insurance sufficient to insure that the monthly payment for support of the child would be paid in the event of the father's death. The agreement stated:

> If, and only if, the husband shall fail to maintain an adequate amount of the aforesaid insurance, an amount equal to the difference and the amount of such insurance maintained and the sum of the monthly payments remaining to be paid at the date of death of the husband shall be paid from the assets of the husband's estate.

*Id.* at 449.

The question was whether social security death benefits received by the child after the death of the father should be credited to the claims against his estate. *Id.* The Court stated:

> The purpose of Social Security is the same as that of an insurance policy with a private carrier, wherein a parent insures against death or loss of physical ability to fulfill moral and legal obligations to dependent children. The premiums on such insurance may be said to have been paid either by the parent or by the parent and employer. The benefits of Social Security are not gratuitous. The terms of 'insured,' 'insurance' and 'beneficiary' are used throughout the Social Security Act. 42 U.S.C.A. Chapt. 7. ...

> *    *    *    *    *    *    *
> We therefore hold that he death benefits paid to Mark Bowden from the Social Security account of his deceased father may be credited against the monthly obligations under the agreement of the parents.

*Id.* at 450.

In the instant case, the trial court stated "that the only reasonable construction of this November 22 order would be that whatever insurance he had was all going to the children," except what he would be legally unable to hold for the benefit of the children. We must respectfully

-11-

disagree.

In ***Kensinger v. Conlee***, 1999 WL 553713 (Tenn. Ct. App. 1999), this Court said:

> The rules of construction normally are applicable to written instruments also apply to judgements and orders. ***Hale v. Hale,*** 838 S.W.2d 206, 208 (Tenn. App. 1992); ***Branch v. Branch,*** 35 Tenn. Ct. App. 552, 555-56, 249 S.W.2d 581, 582-83 (1952). A divorce decree which incorporates a marital dissolution agreement is to be construed like other written instruments, with the court seeking to determine the apparent purposes in the minds of the draftsmen and the trial court. ***See Livingston v. Livingston,*** 58 Tenn. App. 271, 429 S.W.2d 452, 456 (1967).

> The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. ***Winfree v. Educators Credit Union,*** 900 S.W.2d 285, 289 (Tenn. Ct. App.1995); ***Rainey v. Stansell,*** 836 S.W.2d 117, 118 (Tenn. Ct. App.1992). All provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract. ***Union Planters Nat'l Bank***, 865 S.W.2d at 912. The court, in arriving at the intention of the parties to a contract, does not attempt to ascertain the parties' state of mind at the time the contract was executed, but rather their intentions as actually embodied and expressed in the contract as written. ***Id.*** In construing contracts, the words expressing the parties' intention should be given their usual, natural, and ordinary meaning. ***Taylor v. White Stores, Inc.,*** 707 S.W.2d 514, 516 (Tenn. Ct. App.1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. ***Heyer-Jordan & Assocs. v. Jordan***, 801 S.W.2d 814, 821 (Tenn. Ct. App.1990).

> The general rules of evidence regarding the admission of parol evidence and the construction of written instruments also apply to such decrees. ***Livingston,*** 58 Tenn. App. 271, 429 S.W.2d 452. As with other instruments, parol evidence is inadmissible to vary, alter, or contradict such a decree where the decree is complete, unambiguous, and valid, or where there is no fraud, accident or mistake, or claim or allegation thereof with respect to the agreement incorporated in the instrument. ***Id.*** at 457. As with the interpretation and construction of contracts, however, the court may admit evidence

-12-

which will enable the court to place itself in the situation of the parties at the time they entered into the marital dissolution agreement which the decree incorporates. ***Barzizza v. Barzizza***, No. 02A01-9110CV00246, 1992 WL 139862, at *4 (Tenn. Ct. App. June 23, 1992) (citing ***Nashville Life Ins. Co. v. Mathews,*** 76 Tenn. 499 (1881)).

***Id.*** at ** 4- **5.

The language of the court's November 22, 1995 order mandates that the proceeds of whatever life insurance that Mr. Layton had at the time of the order should secure his child support obligations in the event of his death for as long as the obligation remained. There was no proof before the Court, however, as to the remaining obligation, nor as to the amount of the social security death benefit paid for the support of the children. Moreover, the proof before the Court established that after the deceased was charged with contempt of court for failing to follow up on the mandate of the court order to make the children beneficiaries, the deceased made the children beneficiaries to the extent of $33,333.00 each. This change was submitted to the mother's attorney, but there apparently was no objection made, and subsequently the contempt petition was dismissed by consent of the parties. The parties dispute the effect of the dismissal by consent and whether it indicates the intent of the parties, that there is a recognition of the extent of the support obligation in relation to the social security death benefits to be expected.

While we construe the November 22, 1995 order to mandate that the proceeds of whatever life insurance Mr. Layton had at the time of the order should secure his child support obligations in the event of his death as long as the obligation remained, this does not eliminate the dispute as to the precise child support obligation, as indicated above. Under the circumstances, we feel that under the state of this record, summary judgment is inappropriate.

Accordingly, the order of the trial court granting summary judgment is reversed, and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellees, John K. Layton, Amanda N. Layton, Ashley E. Layton, minors by next friend and natural guardian, Lisa Rice Hassell.